UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ROBERT WILKINS,

          Plaintiff,                       Case No. 1:20-cv-1057

v.                                          Honorable Paul L. Maloney

UNKNOWN KAWALSKI et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.    **Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LCF

officials: Prisoner Counselors Unknown Kawalski and Unknown Michelle; Assistant Resident Unit Supervisor (ARUS) Unknown Kline; and Chaplain Unknown Hollingsworth.

Plaintiff alleges that, on June 12, 2020, he sought to have copies made of a number of cases that he wanted to attach to a successive motion for relief from his criminal judgment under Mich. Ct. R. 6.502. Defendant Michelle allegedly made copies of four of the eight documents Plaintiff requested. Defendant Michelle purportedly told Plaintiff that she would finish making copies of the other documents on Monday, June 15, 2020.

On June 15, Plaintiff presented himself at Defendant Michelle's office. She waived him in. Plaintiff then reminded Defendant Michelle that she had approved making the copies the prior Friday, and he wanted to get the copies for his motion to amend his application for leave to appeal.[1] Defendant Michelle allegedly became irate and told Plaintiff to get out of her office. She yelled that she was not going to make any copies and that Plaintiff should get his fill-in counselor, Defendant Kawalski, to make his copies. Defendant Michelle also told Plaintiff to leave immediately or he would receive a ticket for being out of place. Plaintiff attempted to explain, at which point Defendant Michelle jumped out of her seat, repeated that she was not making further copies, and walked to the officer station and directed Officer Speaker to write a major misconduct ticket against Plaintiff for being out of place.

A few minutes later, Plaintiff went to Defendant Kawalski's office. He told Defendant Kawalski what had happened and asked Kawalski to make copies of the documents left on the CSJ-602 legal photocopy disbursement form, which he showed her. (Compl., ECF No. 1,

---

[1] Throughout his complaint, Plaintiff claims that he wished to file a successive motion for relief from judgment. His statement to Defendant Michelle, however, referenced his desire to attach the cases to an appellate filing. The Court takes note that, on June 1, 2020, Plaintiff filed an application for leave to appeal to the Michigan Supreme Court. *See People v.* Wilkins, No. 344633 (Mich. Ct. App.), https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=&CourtType_CaseNumber=2. Moreover, Plaintiff has identified no other case requiring a filing in the Michigan appellate courts. As a consequence, Plaintiff's mention of an intended appeal when speaking with Defendant Michelle does not appear supported by the public record.

2

PageID.5; Ex. 2 to Compl., ECF No. 1-2, PageID.18.)  Just as Defendant Kawalski was preparing to call Defendant Michelle, Defendant Michelle called Kawalski.  Defendant Kawalski asked Defendant Michelle about the copies, indicating that Plaintiff had stated that Defendant Michelle had made some copies but refused others and had said that Defendant Michelle told Plaintiff that Defendant Kawalski was supposed to make them.  After Defendant Michelle spoke for a number of minutes while Defendant Kawalski was silent, Defendant Kawalski hung up the phone.  Kawalski told Plaintiff that Defendant Michelle had instructed Kawalski not to make the copis until she checked with ARUS Kline.

Defendant Kawalski called Defendant Kline and informed him of what had transpired.  After several minutes, Defendant Kawalski hung up the phone.  Kawalski told Plaintiff that Defendant Kline told her not to make copies unless Plaintiff could show that he had a court order setting a 30-day deadline.  Kawalski told Plaintiff that she could not disobey her boss, so, unless he had a court order, her hands were tied.  Plaintiff responded that the policy directives do not require an order for copies to be made, and he referred Kawalski to MDOC Policy Directive 05.03.116.  He also informed Kawalski that, under Mich. Ct. R. 7.215(C)(1), he was required to attach to his motion for relief from judgment all unpublished opinions cited in that motion.

Defendant Kawalski then agreed to call Defendant Chaplain Hollingsworth, who was filling in for the librarian who was out with COVID-19.  Defendant Hollingsworth purportedly told Defendant Kawalski that no court rule required any case law to be attached to any court documents before they are filed.  Plaintiff tried to explain that Defendant Hollingsworth was wrong, but Defendant Kawalski stated that, without a court order, there was nothing she could do.  She advised Plaintiff to file a grievance if he was not satisfied, and she gave him a direct order to leave her office.

Plaintiff alleges that, because he did not receive the copies, his motion for relief from judgment could not be timely filed, resulting in Plaintiff not being able to challenge his conviction under *Lafler v. Cooper*, 566 U.S. 156 (2012), which ostensibly was made retroactive in *People v. Walker*, 938 N.W.2d 31 (Mich. Ct. App. 2019), within the one-year deadline for filing a successive motion for relief from judgment under Mich. Ct. R. 6.502(G)(2).

Plaintiff alleges that Defendants' actions to deprive him of legal copies amounted to cruel and unusual punishment under the Eighth Amendment. He also alleges that the actions violated prison policy and were arbitrary, presumably in violation of his right to due process. Plaintiff further alleges that Defendants deprived him of his right to access the courts, in violation of the First and Fourteenth Amendments. For relief, he seeks compensatory and punitive damages.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Violation of prison policy**

Plaintiff complains that Defendants' refusals to make copies of his requested cases violated MDOC Policy Directive (PD) 05.03.116, ¶¶ A, F, and M. He contends that Defendants' actions were arbitrary, presumably in violation of his right to due process.

To the extent that Plaintiff raises a claim based on state policy or law, he is not entitled to relief under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to the extent that Plaintiff alleges a violation of due process, his claim also fails. The elements of a procedural due process claim are: (1) a life, liberty, or property

5

interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

Plaintiff's claims based on violations of prison policy therefore fail to state a claim.

IV.   **Eighth Amendment**

Plaintiff contends that the Defendants' actions to deny him copies of certain cases for attachment to a motion amounted to cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The production of copies for attachments to court filings falls far outside "conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Plaintiff therefore fails to state an Eighth Amendment claim.

V.     **Access to the courts**

Plaintiff alleges that he was deprived of his right to access the courts when Defendants refused to make copies of certain cases that he intended to use as attachments to a second motion for relief from judgment. As a consequence, he alleges, he was deprived of his right to timely file his second motion for relief from judgment.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the

courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff alleges that, under Mich. Ct. R. 7.215(C)(1), he was required to attach to his successive motion for relief from judgment copies of all of the cases he cited. He further asserts

8

that, because he was unable to obtain copies of the cases he requested, he was prevented from filing a timely successive motion for relief from judgment under Mich. Ct. R. 6.502(g) based on a retroactive change in the applicable law, as established in *Walker*, 938 N.W.2d 31.

Plaintiff's allegations fail to establish that Defendants' actions resulted in actual injury for numerous reasons. First, the state-court rule Plaintiff cites as authority for the requirement that case copies be attached is a rule applicable only to *unpublished* cases cited in *appellate* briefs. *See* Mich. Ct. R. 7.215(C)(1) (discussing rules for appellate briefs). Plaintiff states that he intended to file a motion in the trial court, not an appeal. In addition, according to the Legal Photocopy Disbursement Authorization, only four of eight requested cases were not copied for Plaintiff. All of the uncopied cases had published citations. (*See* ECF No. 1-2, PageID.18.) For both reasons, Plaintiff was not required to attach copies of the requested cases to his successive motion for relief from judgment.

Second, contrary to Plaintiff's suggestion, the *Walker* court did not conclude that *Lafler*, 566 U.S. 156, was a new rule of constitutional law. Instead, the *Walker* court held the exact opposite: "The *Lafler* opinion did not create a new rule—it merely determined *how* the *Strickland* [*v. Washington*, 566 U.S. 668 (1984),] test applied to the specific factual context concerning plea bargaining." *Walker*, 938 N.W.2d at 448. Because *Lafler* did not create a new rule of constitutional law that occurred after the filing of Plaintiff's first motion for relief from judgment, Plaintiff cannot show that he was entitled to file a second or subsequent motion under Rule 6.502(G). *See* Mich. Ct. R. 6.502(G)(2) (permitting the filing of a second or subsequent motion for relief from judgment when the motion is "based on a retroactive change in law that occurred after the first motion for relief from judgment . . . ."). He therefore fails to allege that he suffered actual injury to nonfrivolous litigation when he was denied copies.

9

Third, Mich. Ct. R. 6.502(G) does not impose a one-year deadline—or any deadline—on the filing of a successive motion for relief from judgment. Plaintiff's claim that he has lost his remedy therefore is false.

For all these reasons, Plaintiff's allegation that Defendants' refusals to copy requested cases caused no actual injury to his pursuit of nonfrivolous post-judgment criminal proceedings. Plaintiff therefore fails to state an access-to-the-courts claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 17, 2021                             /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge